# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

## CIVIL CASE NO. 3:06cv383

| | |
|---|---|
| WESTERN SURETY COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>BECK ELECTRIC COMPANY, )<br>INC., JAMES E. BECKER, )<br>FRANK LOTH, and )<br>RACHAEL LOTH, )<br>)<br>Defendants. )<br>_____) | **O R D E R** |

**THIS MATTER** is before the Court on the Plaintiff's motion for summary judgment against Defendants James E. Becker (Becker) and Beck Electric Company, Inc. (Beck Electric) [Doc. 45], and Plaintiff's motion for default judgment against Defendants Frank Loth and Rachael Loth (Loths) [Doc. 48].

## PROCEDURAL HISTORY

On September 7, 2006, Plaintiff Western Surety Company (Western)

initiated this action seeking indemnification from the Defendants pursuant to the terms of a General Indemnity Agreement (GIA) for payments made by Plaintiff in connection with construction performance bonds it issued for the benefit of Defendant Beck Electric. [Complaint, Doc. 1]. Western also stated a claim for breach of contract. *Id*.

Defendants Becker and Beck Electric originally appeared through counsel who filed answer on November 20, 2006. [Answer, Doc. 24]. On March 19, 2007, the attorney for Beck Electric and Becker moved for leave to withdraw, citing irreconcilable differences. [Motion to Withdraw, Doc. 33]. The motion was granted on April 3, 2007. [Order, Doc.34]. After Western moved for summary judgment, Defendant Becker was served with a Roseboro[1] order and Defendant Beck Electric was notified that it was required to appear through counsel or face entry of judgment against it. [Order, Doc. 47, filed November 16, 2007]. Defendant Becker thereafter requested court-appointed counsel for himself and the corporate defendant, a request which was denied. [Letter Motion, Doc.51; Order, Doc 52]. Neither Defendant has filed a response to the motion for summary judgment.

---

[1] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

2

The Loths were served with the summons and complaint on September 14, 2006 but failed to answer or otherwise appear. [Affidavits of Service, Doc. 12, 13]. In response to Western's motion for entry of default, the Clerk of Court entered default on February 26, 2007 as to Defendants Rachael Loth and Frank Loth. [Motion for Entry of Default, Doc.; Clerk's Entry of Default, Doc. 32]. Western thereafter filed its motion for default judgment that is a subject of this Order.

## STANDARD OF REVIEW

> Under the Federal Rules of Civil Procedure, summary judgment shall be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, ... show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (emphasis in original). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Id. at 522, citing Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. *Id.*

> A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

*Id.* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported ... defenses[.]" Celotex Corp., 477 U.S. at 323-24. And, a party may not rely on "the mere pleadings themselves[.]" *Id.*; Baber v. Hosp. Corp. Of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

However, "[s]ummary judgment is not solely a defensive mechanism: Rule 56 expressly contemplates the availability of summary judgment to a claimant. That a movant bears the ultimate burden of proof or persuasion ... is no obstacle to a summary judgment award in favor of that party, so long as the requirements of Rule 56 are otherwise satisfied." Bouchat,

346 F.3d at 521-22.

Nor is the entry of summary judgment against a *pro se* litigant prohibited where he has received a *Roseboro* notice but has failed to comply with the directives contained therein. *See*, Marshall v. Wouldridge, 958 F.2d 368 (table) (4th Cir. 1992). Although courts are directed to construe a *pro se* litigant's pleadings liberally, "[t]his liberal treatment is not without limits, and 'th[e] [Fourth Circuit] has repeatedly insisted that *pro se* parties follow the same rules of procedure that govern other litigants." Kay v. Bemis, 500 F.3d 1214, 1218 (10th Cir. 2007), quoting Garrett v. Selby, Connor, Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."); Loren v. Sasser, 309 F.3d 1296, 1304 (11th Cir. 2002), *cert. den.* 538 U.S. 1057 (2003).

Nonetheless, in considering the facts for the purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

**UNDISPUTED FACTS**

In October 2001, Beck Electric approached Western about the issuance of contract surety bonds in connection with construction projects. Western required that Beck Electric and its officers execute a general indemnity agreement (GIA) prior to the issuance of any such bonds. [Becker deposition, Doc.46-3 at 10; GIA, Doc. 46-5]. The agreement was signed by Defendants Beck Electric, Becker and the Loths. [*Id*., at 7-8]. Becker and the Loths signed both in their capacities as officers of Beck Electric and also in their individual capacities. [*Id*.; Becker depo. Doc. 46-3, *supra*, at 10].

Western thereafter issued payment and performance bonds on behalf of Beck Electric in connection with the following three construction projects: (1) the University of North Carolina at Charlotte (UNCC) Classroom and Office Building Project (UNCC Project); (2) the Shaw Air Force Base, AMU Buildings Project (Air Force Project); and (3) the UNCC Student Housing Fire Alarm System Project (UNCC Fire Alarm Project). [Becker depo., Doc.46-3, *supra*, at 16, 18; UNCC Project Bonds, Doc.46-7; Air Force Project Bonds, Doc.46-8; Mraz Affidavit, Doc.46-9 at ¶6]. As a result of delays and out-of-sequence work, Beck Electric requested

6

financial assistance from Western in order to allow it to complete the first two projects. [Becker depo., Doc46-3, *supra*, at 24-25]. Western and Beck Electric reached an agreement pursuant to which Western paid, as the surety, the claims of Beck Electric's subcontractors and suppliers on these two projects as well as funding the UNCC Project payroll so that the projects could be completed. [*Id*., at 38-44, 50]. Western also paid the subcontractors and suppliers for the UNCC Fire Alarm Project. [*Id*.]. Western paid the total amount of $1,427,929.62 to, or on behalf of, Beck Electric to satisfy payment bond claims from its subcontractors and suppliers on these three projects, to fund Beck Electric's payroll on the UNCC Project and to settle the lawsuits brought by payees (Hitt and Mayer) on these bonds. [Mraz Aff., *supra*, Doc.46-9 at ¶20]. In addition to these funds, Western also incurred expenses in the amount of $15,539.93 in connection with the discharge of its duties under these bonds.[2] [*Id*.].

Western and Beck Electric were named as defendants in two lawsuits. In February 2005, they were sued by Hitt Contracting (Hitt), the general contractor in connection with the Air Force Base Project. [*Id*., at

---

[2] The amount of the expenses shown on the schedule attached to the Mraz Affidavit appears to exceed this amount, but the Court recognizes this $15,539.93 as the amount that Western claims to remain outstanding.

¶8]. After investigation, Western settled with Hitt in the amount of $130,000.00, [*Id*., at ¶14]. Although Western provided defense counsel for Beck Electric under the terms of the GIA, Beck Electric did not desire to participate in settlement negotiations with Hitt and it was not part of the settlement. [*Id*., at ¶¶10-15]. Nonetheless, the attorney for Beck Electric approved the language of the stipulation of dismissal. [*Id*. at ¶15].

The second lawsuit was brought by Mayer Electric Supply Company, Inc. (Mayer) in April 2006 in connection with materials supplied to Beck Electric for the UNCC Project. [*Id*. at at ¶8]. Western once again provided a defense and after investigation found the claim was warranted. [*Id*., at ¶¶16-19]. Western settled with Mayer for $50,000.00 and obtained a settlement on behalf of Beck Electric as well. [*Id*.].

Among the evidence which Western has presented in support of summary judgment is an affidavit from Douglas Mraz in which he specifies the amounts paid by Western on behalf of the Defendants and expenses incurred in discharging its obligations under the bonds. [*Id*.]. Attached to that affidavit are copies of the actual disbursements made. [*Id*.].

The GIA provides in pertinent part that Beck Electric, Becker, Rachael Loth and Frank Loth:

3. A. [a]gree to indemnify and hold the Surety harmless from and against any and all demands, liabilities, losses, ... damages or expenses of whatever kind or nature ... which arise by reason of or as a result of Surety's execution of a Bond on behalf of Principal. This indemnity includes, but is not limited to, costs and fees incurred in investigation of claims or potential claims, adjustment of claims, procuring or attempting to procure the discharge of such Bonds in attempting to recover losses or expenses from the Undersigned or third parties[.]

...

C. Agree to reimburse Surety for any sums advanced or loaned to Principal in accordance with Paragraph 5C below[.]

D. Agree that in furtherance of such indemnity:
(1) The Surety may pay or compromise any claim, demand, suit, judgment or expense arising out of any Bond and any such payment or compromise shall be binding upon the Undersigned and included as a liability, loss or expense covered by this indemnity, provided the same was made by the Surety in the reasonable belief that it might be liable for the amount disbursed, or that such payment or compromise was reasonable or expedient under all circumstances.
(2) In any claim or suit hereunder, an itemized statement of the aforesaid loss and expense, sworn to by a representative of the Surety or the vouchers or other evidence of disbursement by the Surety, shall be *prima facie* evidence of the fact and amount of the liability of the Undersigned under this Agreement.

...

5. C. The Surety may, from time to time, in its sole discretion, make or guarantee advances or loans to or for the account of the Principal to be used in the performance of obligations of the Principal under any contract covered by

> a Bond without the necessity of seeing to the application of the proceeds thereof.  The Undersigned shall be obligated to indemnify the Surety in accordance with the terms of this Agreement for the amount of all such advances and loans[.]

[GIA, *supra*, Doc.46-5 at ¶¶3, 5].

The GIA also contains a choice of law provision calling for the application of the law of Texas. [*Id*. at ¶9(S)].

## DISCUSSION

As noted *infra*, Becker and Beck Electric do not dispute that the GIA was signed or that Becker signed in both his individual and official capacities.[3] [Becker depo., *supra*, Doc.46-3; GIA, *supra*, Doc.46-5; Mraz Aff., *supra*, at ¶9]; Bouchat, *supra*; Baber, *supra*; Marshall, *supra*. Likewise, neither Defendant disputes the existence or contents of thereof. Bouchat, *supra.*  Indemnity agreements are construed under the normal rules of contract construction.  Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998); City of Greensboro v. Reserve Ins. Co., 70 N.C.App. 651, 321 S.E.2d 232 (1984).  "If a contract as written can be given definite and certain legal meaning, then it is

---

[3]The Loths defaulted in any appearance in the action.

unambiguous as a matter of law. ... Whether a contract is ambiguous is a question of law for the court to decide." Underwriters at Lloyd's of London v. Gilbert Texas Const., L.P., __ S.W.3d __, 2007 WL 4415636 **4 (Tex. 2007); Vogler v. Branch Erections Co., Inc., 181 N.C.App. 457, 458, 640 S.E.2d 419, 425 (2007), affirmed ___ N.C. ___, 653 S.E.2d 142 (2007), *quoting* Allstate Ins. Co. v. Chatterton, 135 N.C.App. 92, 93, 518 S.E.2d 814, 816 (1999) ("The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of contract construction."), *disc. rev. denied*, 351 N.C. 350, 542 S.E.2d 205 (2000). Likewise, the question of whether indemnity exists is a rule of contract interpretation and should be determined by the court as a matter of law. Fisk Elec. Co. v. Constructors & Assoc., Inc., 888 S.W.2d 813, 814 (Tex. 1994); Kirkpatrick & Associates, Inc. v. Wickes Corp., 53 N.C.App. 306, 280 S.E.2d 632 (N.C.App. 1981).

The uncontroverted evidence before the Court establishes that there is no genuine issue of material fact as to the existence of the contract or its performance. "In an indemnity contract, the agreement will be construed to cover all losses, damages, and liabilities which reasonably appear to have been within the contemplation of the parties[.]" New York Marine and

11

General Ins. Co. v. Beck Electric Co.[4], 2007 WL 160689 **6 (W.D.N.C. 2007), *affirmed* 2007 WL 4102752 (4th Cir. 2007), *quoting* Kirkpatrick & Associates, Inc., 53 N.C.App. at 308; *accord*, Associated Indem. Corp., 964 S.W.2d at 284-5. "Further, when there is an express indemnification contract, 'a surety is entitled to stand upon the letter of his contract.'" New York Marine, *supra*, *quoting* Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc., 722 F.2d 1160, 1163 (4th Cir. 1983); New Amsterdam Cas. Co. v. Bettes, 407 S.W.2d 307, 314-15 (Tex.App. 1966). The Court thus concludes as a matter of law that the contract is unambiguous and that the Defendants owe an obligation of indemnity for the payments made by Western under the terms of the GIA. As a result, Western is entitled to be indemnified for the payments made to third parties in connection with the three projects at issue. Beard Family Partnership v. Commercial Indem. Ins. Co., 116 S.W.3d 839, 846-47 (Tex.App. 2003) ("The payment bond assures that a financially responsible party, the surety, is committed to paying these lien claimants [for labor and materials] should the principal fail

---

[4] The New York Marine case involved the same issue of indemnification with Defendants Beck Electric and Becker. At the trial court level, the Defendants were represented by counsel but on appeal, Becker appeared *pro se*. The district court granted summary judgment to the surety for indemnification and the Fourth Circuit affirmed that ruling.

to do so." Where the contractor defaults in performance, the surety's obligation to complete performance arises under the terms of the performance bond.); <u>Associated Indem. Corp.</u>, 964 S.W.2d at 284 (Under language of an agreement similar to that at hand, a surety who settles a claim in good faith is entitled to recover amounts paid in settlement of claims.); <u>Engbrock v. Federal Ins. Co.</u>, 370 F.2d 784 (5th Cir. 1967) (A sworn statement of the amounts paid and/or copies of the disbursements made are *prima facie* proof that the payments were proper and that settlement was made in good faith.); *accord*, <u>Fidelity & Deposit Co.</u>, *supra*. (Settlement appropriate where a reasonable investigation conducted.); <u>American Ins. Co. v. Egerton</u>, 59 F.3d 165 (table) **4 (4th Cir. 1995) (Surety had the right to settle the claim in a manner of its own choosing and the prompt payment of an acknowledged liability is not evidence of bad faith.). The Court also finds that the amount sought by Western has been established by the affidavit of Douglas Mraz and the attachments thereto.

Although Western's motion for summary judgment generally sought relief as to all claims raised in the complaint, its brief was limited to the claim for indemnification under the GIA. Since Western's motion for summary judgmment as to this issue is being granted, it is not necessary

to reach the issue of breach of contract, because Western is entitled to recover only once for its injury.

Western also moved for summary judgment dismissing the affirmative defenses raised in the answer filed by the Defendants. Because neither Defendant responded in any manner to the motion, which motion is well taken, it will be granted. The first two affirmative defenses are nothing more than boilerplate defenses included in the answer by the Defendants' previous attorney. And as noted *infra*, in response to a well supported motion for summary judgment, a party may not merely rely on his pleadings. Bouchat, *supra*. The third affirmative defense alleges that Western failed to investigate adequately the claims in the Hitt and Mayer litigations prior to settling the claims. The Defendants presented no evidence to support this. Fidelity & Deposit Co., *supra*; Associated Indem., *supra*. Moreover, the Defendants failed to respond to the motion for summary judgment seeking relief as to this issue and thus, the motion is granted. Bouchat, *supra*.

In addition to failing to respond to the motion for summary judgment, Beck Electric also failed to abide by the Court's previous Order of November 16, 2007 which required the corporate defendant to appear

through counsel or face entry of judgment against it.  As a result, judgment against this Defendant is appropriate.  Stoner v. Santa Clara County Office of Education, __ F.3d __, 2007 WL 2556936 (9th Cir. 2007); Myers v. Loudoun County Public Schools, 418 F.3d 395 (4th Cir. 2005).

     Finally, Western has also moved for a default judgment against Frank and Rachael Loth in the amount of $1,443,469.55.  The Clerk of Court entered default as to the Loths on February 26, 2007.  The well-pleaded allegations of the complaint are taken as true upon the entry of default.  Fed.R.Civ.P. 8(b)(6) ("An allegation ... is admitted if a responsive pleading is required and the allegation is not denied.").  Federal Rule 55(b)(2) provides that a court may enter a default judgment with or without a hearing in order to make an award of damages.  Fed.R.Civ.P. 55(b)(2)(B).  A hearing is required only when the damages sought are not "a liquidated sum or one capable of mathematical calculation."  United Artists Corp. v. Freeman, 605 F.2d 854, 857 (5th Cir. 1979); Insurance Services of Beaufort, Inc. v. Aetna Cas. and Surety Co., 966 F.2d 847, 853 (4th Cir. 1992).  The affidavit of Douglas Mraz, together with the exhibits attached to it, clearly establish the sum of damages.  The damages are a sum certain because the calculation of the damages arises from the

tabulation of the amounts expended by the Plaintiff. Duncan v. GE Consumer Finance, Inc., 2007 WL 1726438 (W.D.Va. 2007), *citing* Fisher v. Taylor, 1 F.R.D. 448 (E.D.Tenn. 1940). Because the amount sought here is undisputed and established by affidavit to be a specified sum, the Court finds that no hearing is necessary. The sum of $1,443,469.55 in damages is established.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion for summary judgment against the Defendants Becker and Beck Electric is hereby **GRANTED** as to its claim for indemnification and Judgment is entered contemporaneously herewith.

**IT IS FURTHER ORDERED** that the Plaintiff's motion for summary judgment against the Defendants Becker and Beck Electric is hereby **DENIED** as moot as to its claim for breach of contract and that cause of action is hereby **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Plaintiff's motion for default judgment as to Defendants Rachael Loth and Frank Loth is hereby **GRANTED** and Judgment is entered contemporaneously herewith.

Martin Reidinger
United States District Judge

Signed: February 5, 2008